# Third District Court of Appeal

## State of Florida

Opinion filed July 29, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D26-0711
Lower Tribunal No. 23-28397-CA-01
_____

**Wall Street Business Academy, Inc.,**
Petitioner,

vs.

**SDSol Technologies, LLC,**
Respondent.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Peter Lopez, Judge.

Velazquez & Perez Perez Law Firm, PLLC, Gabriel Gonzalez Insua, and Leslie Perez Perez, for petitioner.

Feldman Kodsi, Neil D. Kodsi, and Andrew M. Feldman, for respondent.

Before FERNANDEZ, MILLER, and BOKOR, JJ.

MILLER, J.

In this breach of contract dispute, petitioner, Wall Street Business Academy, Inc. ("Wall Street") seeks a writ of certiorari quashing an order compelling it to produce a complete copy of the code repository of its iYurek application in native, electronic format to SDSol Technologies, LLC. Wall Street contends in these proceedings that compelling this disclosure violates trade secret privilege, thereby constituting a departure from the essential requirements of law resulting in irreparable injury. We deny the petition, save as to the confidentiality aspect of the order under review.

I

Wall Street filed suit against SDSol in the circuit court, alleging breach of contract. The gravamen of the operative complaint is that SDSol failed to deliver a suitable source code for a web and mobile application collaboration. Key to the alleged damages is the contention that Wall Street was forced to incur the expense of hiring in-house developers to develop a usable code. Those in-house efforts purportedly yielded the iYurek code and application, which is now in use by Wall Street.

SDSol answered, raised affirmative defenses, and asserted counterclaims for unpaid additional development work. The parties embarked on discovery, and SDSol served a second request for production seeking "[a] complete copy of the code repository of the iYurek app." Wall

2

Street objected, asserting the information sought was irrelevant, overly burdensome and subject to trade secret privilege. The trial court denied SDSol's motion to overrule the objection, without prejudice to completing pending expert depositions, following a hearing.

Wall Street's expert, Dr. Raju Rangaswami, subsequently testified in deposition that he was unable to discern whether SDSol's work product was used in developing the iYurek application. In his view, reviewing the underlying code was "pretty much the only way" to render such a determination. Citing this testimony, SDSol renewed its motion to overrule the objection to its requested production.

Wall Street submitted affidavits from two individuals, Yurek Vazquez and Atin Agarwal, asserting that SDSol's product was not used to create the iYurek platform. The trial court convened another hearing, at the conclusion of which it again declined to overrule the objection. The court instead ordered Wall Street to produce Agarwal for deposition by a date certain, if he was within its control, or, alternatively, SDSol to subpoena him and set the deposition on a mutually coordinated date. Wall Street failed to produce Mr. Agarwal or provide an address for service. It instead alluded to the fact that he resides in India at an unascertainable address.

After conducting yet another hearing, the trial court ordered Wall Street to identify and produce a witness for deposition within twenty days who could opine as to whether SDSol's product was used to develop the iYurek code. Wall Street identified Ian Ponce; but Ponce was never produced, despite an agreed extension.

The trial court convened a fourth hearing, at which time it ordered the appointment of a neutral reviewing expert with the cost to be borne equally by the parties. In the event the parties could not agree, the court stated that it would require Wall Street to produce the code. Invoking the cost-sharing aspect, Wall Street opposed the appointment of a neutral expert. The court then ordered Wall Street to produce the code to SDSol, in native, electronic format, with all original metadata. The code was to be reviewed only for the purpose of evaluating whether SDSol's work product was used in developing the code. SDSol was prohibited from disclosing the code to any third-party for any purpose other than that stated. This petition ensued.

## II

## A

Certiorari is an extraordinary remedy, reserved for a rare category of cases. See Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344, 351–52 (Fla. 2012). To establish entitlement to a writ, the petitioner must

4

demonstrate "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal." See Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 454 (Fla. 2012) (citations omitted). The last two elements are jurisdictional. See Coral Gables Chiropractic PLLC v. United Auto Ins. Co., 199 So. 3d 292, 294 (Fla. 3d DCA 2016).

Although mere overbreadth of discovery is inadequate to satisfy the rigorous certiorari standard, "[d]iscovery orders that require the disclosure of claimed confidential information are reviewed with greater caution" because they potentially implicate "cat-out-of-the-bag" concerns. See Rousso v. Hannon, 146 So. 3d 66, 71 (Fla. 3d DCA 2014) (citations omitted).

**B**

In addition to invoking overbreadth, Wall Street contends the compelled code constitutes a protected trade secret. Trade secrets are defined in Florida's Uniform Trade Secrets Act as,

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

5

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 688.002(4)(a), (b) Fla. Stat. (2026).  Trade secrets are protected from disclosure under section 90.506, Florida Statutes, "but the privilege is not absolute."  See Sea Coast Fire, Inc. v. Triangle Fire, Inc., 170 So. 3d 804, 807 (Fla. 3d DCA 2014).  An assertion of privilege instead yields in instances where it will "conceal fraud or otherwise work injustice."  See id. § 90.506, Fla. Stat.

To protect against the needless dissemination of trade secrets, this court and others "have set forth a three-step analysis for trial courts to undertake when faced with a claim that a discovery request seeks the production of protected trade secret information." See Lewis Tree Serv., Inc. v. Asplundh Tree Expert, LLC, 311 So. 3d 206, 210 (Fla. 2d DCA 2020).  The judge must first determine whether the information contains or constitutes a trade secret.  Id.  "This step will usually—but not always—require the court to conduct an *in camera* review of the documents to determine whether, in fact, they contain trade secret information."  Id. at 210–11.  If the requested information is a trade secret, the court must next determine "whether there is a reasonable necessity for production."  See Sea Coast, 170 So. 3d at 808.  Lastly, if production is ordered, the court must determine "what

6

safeguards, such as a confidentiality order, should be put in place to properly protect that information." See Lewis Tree Serv., Inc., 311 So. 3d at 210.

## III

In the case at hand, the court proceeded to the second judicially created step without first conducting an in-camera review. While courts have "repeatedly granted petitions for writs of certiorari where a trial court skips the first step—conducting the in camera review—and fails to make findings in its order regarding whether the requested information constitutes a trade secret," here, the court did not depart from the essential requirements of law in this regard. See GCTC Holdings, LLC v. Tag QSR, LLC, 346 So. 3d 700, 704 (Fla. 2d DCA 2022). Neither party requested such review. Instead, both the court and the parties operated under the assumption that, if developed exclusively by Wall Street's in-house team, the source code constituted a trade secret. Under these circumstances, the court was within its discretion to proceed directly to the second step.

As to the second step, the trial court determined there was "a reasonable necessity for production." See Sea Coast, 170 So. 3d at 808. The judge adeptly observed that Wall Street's own expert could not determine whether iYurek was developed through the pre-termination efforts of SDSol without first reviewing the underlying code. Given this testimony,

the affidavits produced by Wall Street to counter any suggestion the code was used could not serve as an impenetrable shield against disclosure. Otherwise, SDSol would be divested of its opportunity to test the veracity of non-adversarial pretrial testimony.

The third step, however, gives us pause. We recognize the difficulties inherent in narrowly tailoring confidentiality; and in the months leading up to the challenged order, the trial court valiantly exhausted a myriad of alternative propositions, including submitting the code to a neutral reviewer. But Wall Street objected because of costs.

Trade secret confidentiality must be closely guarded, and SDSol is arguably positioned as Wall Street's competitor. If iYurek was developed without input from SDSol's work product, SDSol should not be privy to the code. Consequently, broadly distributing the repository to SDSol as an entity, rather than SDSol's designated expert, runs the palpable and irreparable risk of misappropriation. Accordingly, we quash only that aspect of the order bearing on confidentiality, confident that the trial court will prescribe a more narrowly tailored prohibition on dissemination. See, e.g., ALK Assocs., Inc. v. Multimodal Applied Sys., Inc., 261 N.J. Super. 310, 316 (App. Div. 1993) ("[W]e see that a court . . . can enter a protective order for disclosure which may exclude dissemination to a party and its employees. Disclosure may be

8

limited solely to the party's attorney and experts who must agree to make no further disclosure, including disclosure to the clients, without further order of the court. Further orders of protection may be needed if the information is to be utilized at trial. If trade secrets are being disclosed during testimony, the judge may be required to close the courtroom and seal the record of the testimony. The court may also be required to instruct jurors to make no disclosure of what they have heard concerning certain subjects.").

Petition denied, in part, granted, in part.